FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BETTY BERNELL M.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:19-CV-00006-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 12, 13**. Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3), which partially granted and partially denied her applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-6, 14-37. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.  Jurisdiction

Plaintiff filed her application for disability insurance benefits on March 9, 2015 and her application for supplemental security income on April 1, 2016. *See* AR 18, 172-73, 191-99. In both applications, she alleged disability beginning on February 1, 2015.[1] AR 172, 192. Plaintiff's Title II application was initially denied on August 25, 2015, *see* AR 111-14, and on reconsideration on April 4, 2016. *See* AR 118-121. On April 15, 2016, Plaintiff filed a request for a hearing. AR 122. The Title XVI application was then escalated in the hearing process so it could be adjudicated together with Plaintiff's Title II application. AR 18.

A hearing with Administrative Law Judge ("ALJ") Stephanie Martz occurred on September 12, 2017. AR 41-75. On March 21, 2018, the ALJ issued a partially favorable decision concluding that Plaintiff was not disabled as defined in the Act prior to June 5, 2017, but became disabled on that date and continued to be disabled through the date of her decision. AR 14-37. On December 18, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981,

---

[1] However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

416.1481. On January 7, 2019, Plaintiff timely filed the present action challenging the decision. ECF No. 1. Accordingly, her claims are properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done

for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial

activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571,

416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09,

416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied and no further evaluative steps are

required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe

impairments "meets or equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe as to preclude substantial gainful activity.

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or

equals one of the listed impairments, the claimant is *per se* disabled and qualifies

for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the

fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable

interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.     Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 52 years old on the alleged date of onset—which the regulations define as an individual closely approaching advanced age—and turned 55 in June 2017, thus becoming an individual of advanced age. AR 30, 77; *see* 20 C.F.R. §§ 404.1563(d)-(e), 416.963(d)-(e). She graduated from high school, completed two years of college, and can read, write, and communicate in English. AR 49, 204, 206. She has past relevant work as a medical secretary, as a cashier, and as a receiving staffperson at a department store. AR 207, 217-18, 235-38.

## V.     The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time prior to June 5, 2017, but became disabled on that

date and continued to be disabled through March 21, 2018 (the date the ALJ issued her decision). AR 19, 31-32.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 20.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, obesity, lumbar degenerative disc disease, degenerative joint disease in the left knee, diabetes with neuropathy, affective disorder, anxiety-related disorder, and personality disorder. AR 21.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 24.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). AR 151. With respect to Plaintiff's physical abilities, the ALJ found that Plaintiff could lift and carry 10 pounds frequently, 20 pounds occasionally, and had an unlimited ability to push and pull within these exertional limitations. AR 25. She could sit about six hours and stand or walk for another six hours in an eight-hour workday with regular breaks. AR 25. She could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but

could never climb ladders, ropes, or scaffolds. AR 25. She could not have concentrated exposure to vibration or hazards. AR 25.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could understand, remember, and carry out simple tasks. AR 25. She could have superficial interaction with the general public and interact appropriately with a small group of co-workers and supervisors. AR 25. She could adapt to modest changes after some orientation. AR 25. Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 30.

**At step five**, the ALJ found that prior to June 5, 2017, Plaintiff's age, education, work experience, and residual functional capacity allowed her to perform some jobs that existed in significant numbers in the national economy. AR 30. These included a marker, a conveyor line bakery worker, and an office helper. AR 31. However, the ALJ then concluded that beginning on June 5, 2017 (the date Plaintiff's age category changed), there were no jobs that existed in significant numbers in the national economy that she could perform. AR 31.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly evaluated and weighed the medical opinion evidence, (2) improperly discredited her subjective pain complaint testimony as well as her son's third-party function report, and (3) posed an

incomplete hypothetical to the vocational expert that did not account for all of her limitations. ECF No. 12 at 7, 9-16.

**A.      The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence from four providers: (1) examining psychologist Amy Ford, Psy.D.; (2) examining psychologist Rebekah Cline, Psy.D.; (3) reviewing psychologist Steven Johansen, Ph.D.; and (4) treating physician Kelly Gillespie, M.D. ECF No. 12 at 9-12.

**1.      Legal principles**

The Social Security Act's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2. Examining psychologists Amy Ford, Psy.D. and Rebekah Cline, Psy.D. and reviewing psychologist Steven Johansen, Ph.D.

Dr. Ford examined Plaintiff in August 2015. AR 445-450. She opined that Plaintiff's abilities to concentrate, persist, adapt, and be flexible were impaired and that her ability to interact socially was poor. AR 450. Dr. Cline examined Plaintiff in February 2016. AR 460-64. She opined that Plaintiff's depressive disorder caused marked symptoms including social withdrawal and isolation. AR 461. In describing her symptoms to Dr. Cline, Plaintiff stated, "I don't want to do anything. I don't want to shower, go anywhere[,] talk to anyone, see anyone. I want to stay in my own little corner and be left alone." AR 460. Later in February 2016, Dr. Johansen reviewed Dr. Cline's report and Dr. Gillespie's recent physical functional evaluation and generally opined that the available medical evidence supported their diagnoses and functional limitations. AR 518.

The ALJ assigned little weight to these three opinions. AR 29. First, the ALJ reasoned that they were inconsistent with the treatment notes from Dr. Gillespie, Dr. Steven Fowler, and Plaintiff's individual counselor Kristen James. *See* AR 28-29. The ALJ outlined these notes in detail and found that they reflected Plaintiff's low stress tolerance but generally normal cognition, adaption, and mental status examination findings, which undermined the reliability of the three psychologists' opinions. AR 28-29. Second, the ALJ reasoned that these three opinions were inconsistent with Plaintiff's reported activities, which included babysitting large groups of children, maintaining a romantic relationship, getting married, and traveling to California. AR 28-29. Generally speaking, these are both legitimate reasons for discounting medical providers' opinions. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (same); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (inconsistencies between physician's opinion and claimant's daily activities is legitimate reason to discount that opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (same).

Here, Plaintiff only addresses the second reason the ALJ gave for discounting these three opinions—that they were inconsistent with her daily activities. *See* ECF No. 12 at 9-10. Plaintiff does not address or even acknowledge

the ALJ's first rationale—that these opinions were inconsistent with the rest of her mental health treatment notes—despite the fact that the ALJ outlined these records in detail. *See id.*; AR 28. By not addressing all of the ALJ's rationales, Plaintiff has waived her challenge to the ALJ's consideration of Dr. Ford's, Dr. Cline's, and Dr. Johansen's opinions. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Samuel L. v. Comm'r, Soc. Sec.*, No. 2:18-CV-00358-RHW, ECF No. 12, at 22-27 (E.D. Wash. 2020); *Matthew S. v. Saul*, 4:18-CV-05115-RHW, ECF. No 16, at 12-15 (E.D. Wash. 2019).

### 3. Treating family medicine physician Kelly Gillespie, M.D.

Dr. Gillespie began treating Plaintiff in December 2014 and provided ongoing care thereafter. AR 332, 749. In January 2016 and May 2016, he submitted reports describing Plaintiff's physical capabilities. *See* AR 471-74, 477-79. In the first, he marked that Plaintiff's fibromyalgia and diabetic neuropathy severely limited her abilities to sit, stand, and walk. AR 478. He also marked that she was unable to perform sedentary work. AR 479. In the second report, Dr. Gillespie opined that Plaintiff's fibromyalgia and diabetic neuropathy significantly restricted her abilities to lift, carry, stand, walk, sit, handle, and feel. AR 471-73. He believed that her impairments would cause her to be off task more than 50 percent throughout the day and absent more than four days per month. AR 472.

When asked to identify particular medical findings that supported these limitations, Dr. Gillespie wrote, "fibromyalgia." AR 472.

The ALJ assigned little weight to Dr. Gillespie's two reports, reasoning that (1) they were inconsistent with his own progress notes from throughout his treatment of Plaintiff, which consistently reflected few, if any, restrictions, and (2) Dr. Gillespie did not examine Plaintiff or record any objective findings when he completed these evaluations, which suggested that his opinions were based on Plaintiff's self-reports. AR 29-30. These are both legitimate reasons for discounting medical opinions. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (physicians' opinions may be rejected if unsupported by their own treatment notes); *Ghanim*, 763 F.3d at 1162 ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (same).

### i. Inconsistent with progress notes

Plaintiff baldly asserts, without any substantive discussion of the record, that Dr. Gillespie's two reports were consistent with his progress notes. ECF No. 12 at 11. However, a review of the records supports the ALJ's finding that they were not. When Dr. Gillespie established care with Plaintiff in December 2014, he diagnosed diabetic neuropathy but noted that it was stable and under "good

control." AR 337. He believed Plaintiff's arm symptoms were due to tendonitis from overuse and that her back symptoms could be from "standing up to 12 hours a day for her 2 jobs." AR 332. He was concerned about Plaintiff's weight and advised her to get 30 minutes of aerobic exercise five days per week. AR 337.

In March 2015, Dr. Gillespie diagnosed Plaintiff with fibromyalgia, which was the first diagnosis for this condition. AR 366. He noted tenderness in all of the "standard fibromyalgia tender spots." AR 364. However, his physical examination found normal motor tone, gait, and extremity strength. AR 364. He advised that aerobic exercise would "help with fibromyalgia." AR 366.

Dr. Gillespie next saw Plaintiff in April 2015. AR 378. Plaintiff's chief complaint was dizziness. AR 378. Her physical examination was normal. AR 379-80. Dr. Gillespie noted that her diabetes was under "good control" and that her neuropathy was "palliated by the gabapentin." AR 378, 381. He also noted that her "fibromyalgia [was] stable." AR 378. He continued advising her to get 30 minutes of aerobic exercise five times per week. AR 381.

Dr. Gillespie next saw Plaintiff in May 2015 and she had no complaints. AR 392. In October 2015, she told Dr. Gillespie that her fibromyalgia was stable and that her diabetic neuropathy was "doing well," although she had some foot cramping "especially after a long days [sic] work on her feet." AR 498. Dr. Gillespie confirmed that her neuropathy was "stable on diet / lifestyle changes and

metformin" and that her fibromyalgia was "stable on effexor." AR 500. Plaintiff

next saw Dr. Gillespie in January 2016, at which time he completed the first report

assessing her physical capabilities. AR 484. However, Plaintiff had no complaints

at this appointment, either. AR 484-86.

Over the course of the next year and a half, Plaintiff would sometimes report

worsening control of her diabetic neuropathy and flare-ups in her fibromyalgia,

particularly when experiencing stress. AR 689-690, 697, 701, 718, 749. For

example, she had flare-ups when she went "back to work sorting cherries for 15

hours a day" and also when she had family issues. AR 697, 749. Other times she

reported no symptoms. AR 695, 706, 710-11, 712, 734-35, 737, 744. In September

2016, Dr. Gillespie noted that Plaintiff's "neuropathy is the best it has been in a

long time." AR 706. In March 2017 and July 2017 her neuropathy was still "doing

well" and Dr. Gillespie also noted that "fibromyalgia is better on lyrica." AR 735-

36, 744. Throughout his treatment history of Plaintiff, Dr. Gillespie's examination

findings never reflected any significant restrictions. *See* AR 689-95, 697-719, 734-

740, 744-752.

Plaintiff argues that "Dr. Gillespie's progress notes showed that [she] was

tender at all standard fibromyalgia tender points." ECF No. 12 at 11. While true,

the ALJ did not question the fibromyalgia diagnosis, *see* AR 21—she just did not

agree that Plaintiff experienced the debilitating symptoms that Dr. Gillespie

reported. Plaintiff also asserts that Dr. Gillespie's tender point findings were "substantial evidence to support h[is] opinions." ECF No. 12 at 11. However, the issue is whether the *ALJ's* findings are supported by substantial evidence, not whether a provider's are.

### ii.       Opinion based on Plaintiff's self-reports

Plaintiff also challenges the second rationale the ALJ gave for discounting Dr. Gillespie's opinion, arguing that ALJs "cannot merely assume that a medical provider's opinion was based solely (or largely) on a claimant's self-report . . . [but] must explain how she reached this conclusion." ECF No. 12 at 11. Plaintiff contends that the ALJ did not explain why she believed Dr. Gillespie's opinion was based on Plaintiff's self-reports. *Id.* However, the ALJ did—she noted that Dr. Gillespie did not examine Plaintiff on the day he completed the evaluation, nor did he note any objective findings in the report. AR 29; *see* AR 472, 695.

Plaintiff also argues that doctors are trained to rely on patients' self-reported symptoms and that allowing their opinions to be discounted on this basis "fails to give proper deference to the claimant's medical providers." ECF No. 12 at 12. While this may be true, this argument lacks merit in light of current law. *See Ghanim*, 763 F.3d at 1162.

///

///

**B.     The ALJ did not Improperly Reject Plaintiff's Subjective Complaints or her Son's Third-Party Function Report**

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms as well as her son's lay witness third-party function report. ECF No. 12 at 12-15.

Once a claimant produces objective medical evidence of an underlying impairment that could reasonably produce some degree of the symptoms alleged—as Plaintiff has done—the ALJ can reject the claimant's symptom testimony only by providing "specific, clear, and convincing reasons." *Tommasetti*, 533 F.3d at 1039. Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were belied by (1) her daily activities, and (2) her physical examination findings and reports to her medical providers. AR 26-29. Generally, these are clear and convincing reasons for questioning the credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c)(2), (c)(3)(i); *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Molina*, 674 F.3d at 1113; *Rollins*, 261 F.3d at 857.

**1.     Complaints inconsistent with daily activities**

With respect to her physical abilities, Plaintiff testified that she did not have the stamina to stand or the ability to repeatedly use her right arm or hand for more than 10 or 15 minutes. AR 54-56. She testified that she could not grip objects and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

could no longer sew, cross-stitch, or quilt. AR 55-56. She described sudden onsets of both spasms and "complete fatigue" that would occur while washing dishes, cleaning the kitchen, or cooking dinner, which would require her to stop and lie down. AR 58, 62. She stated that her fatigue prevented her from getting anything done and this was the case "almost every single day." AR 63. She also stated that her pain prevented her from walking down the street. AR 58.

With respect to her mental symptoms, Plaintiff testified that she had difficulty with people moving around her and with crowds. AR 65-66. She stated she was "very paranoid about being in a room or in a place with a lot of people." AR 65. She said she would sit with her back to the door and be "looking around constantly." AR 65. If someone got too close, she would "try and get away and get to a place where there's nobody around." AR 65. She further testified that this did not only occur in crowds, but could also occur with just one person. AR 66. Finally, she testified that she could not concentrate and had severe memory problems to the extent that she could not remember if she had taken her medications, taken a shower, or had eaten breakfast. AR 68.

Despite these complaints, Plaintiff told her counselor that she had kids come over to her house "all the time" and also "discussed babysitting for large groups of children." AR 523, 594. She made plans to watch her niece's children. AR 590. She had been gardening, sewing, and cross-stitching. AR 467, 566. She had the

concentration and memory required to plan her wedding, although it was a stressful experience. AR 657, 659-660. In April 2017, she traveled to California to visit family. AR 655-56. She was able to shop at Walmart. AR 662.

In May 2016, she asked her roommate to move out, so she got a job picking cherries 15 hours per day for several weeks "to make extra money to cover the bills he [had] been paying." AR 551, 697. In September 2016, she was working on starting a cake business, already had several orders, and her goal was to open her own shop. AR 612. The next month, she continued to get more orders. AR 620. In late November 2016, she worked as a bell ringer for the Salvation Army and reported that it "hurt way less than [she] thought it would." AR 630.

Meanwhile, Dr. Gillespie encouraged Plaintiff to exercise five days per week. AR 337, 366, 381. She used the treadmill occasionally and stated that she would start a gym membership soon. AR 493. Dr. Fowler stated, "I think a more structured home exercise program will be necessary. I will see her in 12 weeks to see how she is doing in [physical] therapy and her swim treatments, and at that point advance her on a treadmill exercise regimen." AR 493.

The ALJ properly concluded that these activities undermined the credibility of Plaintiff's testimony, AR 26-29, including the portions of testimony Plaintiff cites in her brief. *See* ECF No. 12 at 13. Plaintiff also argues that her ability to do some activities of daily living does not mean that she was also able to work, given

that home activities have greater flexibility, allow for assistance from others, and

do not require minimum standards of performance. ECF No. 12 at 13-14 (citing

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). While this can be true, if

the claimant's level of activity is inconsistent with the limitations he or she claims

to have, this nevertheless has a bearing on credibility. *Id.*; *accord Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1998). And because Plaintiff's pain complaints

were inconsistent with her abilities to babysit, sew, cross-stitch, plan a wedding,

travel, start a business, work other jobs, use a treadmill, and join a gym, the ALJ

did not err in questioning her credibility. *See Garrison*, 759 F.3d at 1016.

### 2.    Complaints inconsistent with medical evidence

The ALJ also reasoned that Plaintiff's physical examination findings and

reports to her medical providers were generally inconsistent with her alleged level

of limitation. AR 26-28. In doing so, the ALJ outlined the findings of and

Plaintiff's reports to many providers, including Joel Cummings, M.D., Dr.

Gillespie, Dr. Fowler, Dr. Tony Kim, counselor Kristen James, and A. Peter Weir,

M.D. AR 26-28.

Plaintiff does not dispute the ALJ's description of the medical records, of the

providers' examination findings, or of her reports. ECF No. 12 at 14. Rather,

Plaintiff argues only that "the hallmark of the examination of a fibromyalgia

patient is the lack of objective findings." *Id.* This argument ignores the fact that the

ALJ noted inconsistencies between the medical evidence and Plaintiff's reports with respect to several of her conditions—not just fibromyalgia. *See* AR 26-28. But even with respect to fibromyalgia, the ALJ's point was that despite Plaintiff's allegedly debilitating symptoms, her physical examinations did not reveal significant limitations—she had no problems with coordination, gait, balance, range of motion, ambulation or moving around, getting on or off examination tables, or with muscle or grip strength. *E.g.*, AR 364, 468-70. The ALJ also discounted Plaintiff's testimony on the basis that she testified to symptoms far worse than those she reported to her providers, *see*, *e.g.*, AR 378, 392, 500, 735, which Plaintiff does not address. ECF No. 12 at 14.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because she provided multiple clear and convincing reasons for doing so.

### 3. Third party function report

Plaintiff argues the ALJ improperly rejected her son's lay witness third-party function report. ECF No. 12 at 14-15; *see* AR 256-263.

ALJs must consider evidence from lay sources about the claimant's pain, symptoms, and functional limitations. 20 C.F.R. § 404.1529(c)(3). Competent

lay testimony "cannot be disregarded without comment." *Stout v. Comm'r of Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). ALJs must give "germane"

reasons for discounting this evidence. *Id.* However, "if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those

reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d

at 1114. This principle applies to third-party function reports—when a family

member submits a third-party function report regarding the claimant's symptoms

and limitations, an ALJ may reject the report for the same reasons he or she

rejected the claimant's testimony. *McGahuey v. Colvin*, 2014 WL 4537542, at *8

(D. Or. 2014); *see also Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010);

*Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

In this case, Plaintiff's son submitted a third-party function report regarding

his observations of Plaintiff's pain, symptoms, and functional limitations. AR 256-

63. This information was similar to Plaintiff's testimony. *Compare* AR 48-69, *with*

AR 256-63. For this reason, the ALJ discounted the son's third-party function

report for the same reasons she discounted Plaintiff's subjective symptom

testimony, as Plaintiff acknowledges. AR 29; ECF No. 12 at 15. And because the

ALJ properly discounted Plaintiff's subjective complaints, *see infra* at 17-22, this

was proper. *See McGahuey*, 2014 WL 4537542, at *8.

///

## C.   The ALJ's Step Five Finding

Finally, Plaintiff argues that the ALJ improperly found that there were a significant number of jobs in the national economy that she could still perform. ECF No. 12 at 15-16. Her sole argument is that the ALJ's hypothetical question for the vocational expert did not account for all of her limitations. *Id.*

However, the hypothetical the ALJ posed to the vocational expert was consistent with her findings relating to Plaintiff's residual functional capacity. *Compare* AR 25, *with* AR 71-72. Plaintiff argues the ALJ "failed to account for limitations set forth by Dr. Ford, Dr. Cline, Dr. Johansen, and Dr. Gillespie." ECF No. 12 at 16. However, the ALJ discounted these opinions and this argument simply restates her prior argument that the ALJ improperly weighed the medical opinion evidence. Courts routinely reject this argument. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. Because the ALJ included all of the limitations that she found to exist, and because her findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857.

Accordingly, the ALJ properly identified available jobs in the national economy that matched Plaintiff's abilities and therefore satisfied step five of the sequential evaluation process.

## VIII.  Order

Having reviewed the briefs, the record, and the ALJ's findings, the Court concludes the Commissioner's decision is supported by substantial evidence and is free from legal error.

Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3.    Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this March 23, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge